STATE *ex rel.* JULIUS GROSCHKE, Respondent, v. A. B. CROWDER *et al.*, Appellants.

St. Louis Court of Appeals, April 15, 1890.

Practice, Appellate: NON-PREJUDICIAL ERROR. The judgment appealed from will not be reversed by this court for non-prejudicial error.

*Appeal from the St. Louis City Circuit Court.*—HON. JACOB KLEIN, Judge.

AFFIRMED.

*Henry B. Davis* and *Louis A. Steber*, for the appellants.

*Lubke & Muench*, for the respondent.

BIGGS, J., delivered the opinion of the court.

On the twenty-ninth day of December, 1888, one Philip Becker and Huldah K., his wife, were the owners of a small grocery store on Olive street in the city of St. Louis, and on that day they transferred and delivered to the relator, Julius Groschke, the entire stock, including fixtures. At that time the defendants, Crowder and Dugger, were creditors of the Beckers. Two days after the transfer to the relator they instituted their action by attachment against Philip Becker, and, under their orders, the constable seized under the writ of attachment the stock of groceries and fixtures. The relator filed a claim with the constable under the provisions of an act of the legislature, approved March 3, 1855, entitled an "Act concerning the duties of the sheriff and marshal in the county of St. Louis in relation to the levy and sale of such property under execution or attachment, as may be claimed by third parties." Under the provisions of the same act the plaintiffs in the attachment suit executed the bond sued on herein, in which the obligors therein bound themselves to indemnify the relator for all damages sustained by him on account of the seizure and sale of the property levied upon.

The defendants' answer, among other things, contained the following: "Defendants further answering say that whatever claim or title said Groschke possessed at the time of said levy was in fraud of the creditors of said Becker, and was given to said Groschke for the purpose of hindering, delaying or defrauding the creditors of said Becker."

The case was tried on the issue thus presented, and there was a verdict and judgment for plaintiff for the

sum of two hundred dollars. From this judgment the defendants have appealed.

There was but little conflict in the evidence, and the complaint made by the defendants pertains to the instructions. If the case was submitted to the jury under proper declarations of law, the affirmance of the judgment must necessarily follow. However, it will be necessary and requisite to a proper understanding of the instructions, and the position assumed by the defendants' counsel, to make a brief statement of the facts, as disclosed by the record, out of which this litigation has arisen.

On the twenty-eighth day of February, 1888, Philip and Huldah K. Becker executed their note to the relator for two hundred dollars, due thirty days after date. The note was given for borrowed money, and, to secure it, the Beckers executed a chattel mortgage on their household goods and the store fixtures. The fact that the money was loaned, and that the chattel mortgage was properly executed and recorded, is not controverted. The time for the payment of this note was extended at the end of each succeeding month until the twenty-eighth day of December, 1888, at which time the transfer of the stock of goods was made by the Beckers to Groschke. At the time of each such extension, Becker paid to the relator the sum of ten dollars, making a total payment of ninety dollars. They both testified that these sums were paid in consideration of additional time for the payment of the note, and were not intended as payments either of principal or interest. The relator and Becker both testified in regard to the terms and conditions of the transfer, concerning which they are not quite in accord. We gather from Groschke's testimony that he was to release his mortgage on the household furniture, and, in its place, he agreed to accept the stock of goods; that he and Becker thought that the fixtures and stock were worth about

the amount of his debt; that thereupon the stock and fixtures were delivered to him with the understanding that he would sell the property at auction and apply the proceeds to the payment of his debt. The conclusion to be drawn from this testimony is that the stock of groceries were pledged and delivered as security for the debt, rather than as an absolute sale for a stipulated price, and that the fixtures were delivered under the mortgage to be likewise sold to liquidate the debt. Becker seems to have understood the transaction as an absolute sale. Whatever the facts may be, the law is similar, as the transfer and absolute delivery of a grossly excessive amount of property, even as a pledge to secure a debt, when made by a debtor known to be in failing circumstances, will furnish evidence that the transaction is fraudulent, as designed to hinder and delay creditors. Concerning the fixtures, we think that it is fairly inferable from the testimony of both that they were delivered under the mortgage. The plaintiff's evidence also tended to show that the amount due on the note was two hundred dollars, and that the value of the stock was about that amount, and of the fixtures sixty-five dollars.

On the foregoing state of facts, the court, at plaintiff's instance, instructed the jury as follows:

"1. The court instructs the jury that in this state an insolvent debtor has the lawful right to prefer one of his creditors by satisfying his claim in full, even though the necessary effect of so doing will be to hinder and delay any or all of his other creditors.

"2. The court instructs the jury that, if they believe from the evidence that, at the time of the transfer of the property in question from Huldah K. Becker and her husband to Julius Groschke, said Beckers, or either of them, were justly indebted to said Groschke in a debt then due; that said transfer was received by said Groschke for the sole purpose of securing to himself the

payment of said debt, so due ; and that, within a rea-
sonable time after such sale, said Groschke took actual,
open, notorious and exclusive possession of said prop-
erty, and 'so continued until the levy made thereon by
direction of defendants, Crowder and Dugger, then
your finding herein must be for the plaintiff in such
sum as you may find from the evidence to have been the
reasonable market value of such property at the time of
levy ; provided such value does not exceed the then
amount of said Groschke's debt, and, if such value
should be found by you to exceed such debt, then your
finding should be in the amount of such debt.

" 3.  The court further instructs the jury that, if
they find from the evidence that the sums, paid monthly
after the execution of the mortgage by Philip Becker to
Groschke, were voluntarily paid by said Becker to said
Groschke for the purpose of procuring extension of said
mortgage, when overdue, and that such payments were
not made by said Becker upon the principal debt secured
in said mortgage, then the jury should disregard such
payments in arriving at a conclusion as to the amount
due Groschke from Becker on the twenty-ninth day of
December, 1888.

" 4.  If the jury find from the evidence that the
mortgage read in evidence, from Philip and Huldah
K. Becker to relator Groschke, was made and deliv-
ered upon a valuable consideration between the parties
and in good faith, without intent to hinder, delay
or defraud the creditors of said Philip or Huldah
K. Becker, and that the defendants, Crowder and
Dugger, caused some of the articles in said mortgage
described to be levied on, then, even if the jury find
under the other instructions that the transfer of
December 29, 1888, was void as to creditors of said
Beckers, their finding must be in favor of the plaintiff
for the reasonable market value of the goods so in said
mortgage described, which you may find from the evi-
dence were levied on, at the date of said levy."

The defendants asked the court to instruct as follows:

"The jury are instructed that, while a debtor has the right to transfer sufficient of his property to any óne of his creditors in payment of a just debt to the exclusion of his other creditors, yet such transfer must be made in good faith for that purpose only, and he will not be permitted in such disposition of his property to transfer more in value than is sufficient to pay such debt; if, therefore, the jury find that Becker transferred, under the pretense of paying Groschke, property of a value largely in excess of the debt owed Groschke, and if at the time said Groschke knew that said property was of a value largely in excess of his debt, then the jury are instructed that said transfer to said Groschke was void, and the jury will find for the defendants.

"The court instructs the jury that, if they find from the evidence that at the date of said transfer that said Becker was in a failing condition, and that for the pretended purpose of preferring Groschke he transferred all his property to said Groschke to the exclusion of his other creditors, and that said transfer was of property largely in excess in value to the amount due said Groschke, and that said Groschke knew that said property was largely in excess of said debt, and that said Groschke received said property with the intent to hinder, delay or defraud the creditors of said Becker, then the court instructs you that said transfer was void as to the creditors of said Becker."

The court refused these instructions, but in lieu of them gave the following:

"The jury are instructed that while a debtor has the right to transfer sufficient of his property to any one of his creditors in payment of a just debt, to the exclusion of his other creditors, yet such transfer must be made in good faith for that purpose only, and he will not be permitted, under the pretense of paying

a debt, to transfer more property than is reasonably sufficient for that purpose, to the prejudice of other creditors. If, therefore, you believe from the evidence that Becker, under the pretense of paying or preferring Groschke as a creditor, transferred to him property largely exceeding in value the amount due to said Groschke with intent thereby to hinder, delay or defraud his other creditors, and that Groschke took said property with knowledge of such facts, then you are instructed that said transfer of December 29, 1888, read in evidence, was void as to said Becker's other creditors, and the plaintiff is not entitled to recover on the strength thereof. But this does not deprive the plaintiff of the right to recover on the strength of the chattel mortgage read in evidence, if under the evidence and other instructions you find any part of the property levied on was included in said mortgage.''

It will be observed that the plaintiff's second instruction treated the transfer of the stock and the delivery of the possession of the fixtures as a pledge for the security of the relator's debt, and confined the recovery to the reasonable value of the property not to exceed the amount of Groschke's debt. This was certainly the most favorable view for the defendants, and, as the verdict of the jury did not exceed the amount which the relator claimed to be due on his debt, to-wit, two hundred dollars, we cannot see upon what ground the defendants can complain. If the transaction between Groschke and Becker was not fraudulent (a fact which the jury was required to find), the defendants could not have expected the court to place a more favorable limit on the amount of recovery.

The defendants next complain of the plaintiff's fourth instruction, and it is objected to on the ground that the relator's right under the mortgage was merged in the agreement of December 29, and that consequently the right of action as to the entire property

must depend solely upon the validity of that agree-
ment. In other words, the defendants complain because
the court instructed the jury in effect that, although
the finding might be against the good faith of the trans-
action of December 29, when the property was turned
over to Groschke, yet the relator was entitled to a judg-
ment for the reasonable value of the fixtures covered by
his mortgage, provided the jury found that the mortgage
was executed in good faith and for a valuable consider-
ation. The evidence in the case fully justified this
instruction. The mortgage debt was past due, and, if
the mortgage was valid, the relator's title to the fixtures
was complete, and it in no way depended upon the
good faith of the subsequent action of the parties con-
cerning the possession. But, aside from this, we can-
not see how the defendants were prejudiced by this
instruction. The jury found that the contract of
December 29 was valid, and made in good faith, and, if
it be conceded that the rights of the relator under the
mortgage were merged in the subsequent agreement, it
would not help the defendants' case in the least. If
there had been a finding for the defendants as to the
goods, and against them as to the fixtures, then there
might be some grounds for the complaint now made.

What we have said about the plaintiff's fourth
instruction disposes of the defendants' instructions.
The defendants asked the court to declare that the find-
ing must be for them as to the entire property, unless
the contract of December 29 was made in good faith;
thus ignoring the relator's right to a verdict for the
value of the fixtures, provided the mortgage was exe-
cuted in good faith and for a valuable consideration.
The court's instruction, which was given instead of
those asked by the defendants, supplied this defect and
presented the defendants' side of the case in other
respects in a very fair and favorable way.

And, lastly, the defendants complain that only one
form of verdict was submitted to the jury. Just in

what way this was prejudicial to the defendants is not made to appear. There was no evidence tending to prove that the Beckers did not owe Groschke, or that the mortgage was not executed in good faith, and. we cannot see how the jury, under this state of proof, could have failed to find a verdict in favor of the plaintiff for at least the value of the fixtures. This furnishes a very good reason for the action of the court in submitting only one form of verdict.

Finding no error in the record, the judgment of the circuit court will be affirmed. All the judges concurring, it is so ordered.